**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

KOREASE COLLINS,                  *
                                  *
        Plaintiff,                *
                                  *
        v.                        *        CV 125-103
                                  *
CSRA ECONOMIC OPPORTUNITY         *
AUTHORITY, INC.,                  *
                                  *
        Defendant.                *
                                  *
                                  ————————

**O R D E R**

————————

Presently pending before the Court are Plaintiff's motion for entry of default (Doc. 17) and Defendant's motion to dismiss Plaintiff's amended complaint (Doc. 19).  For the following reasons, Plaintiff's motion for entry of default is **DENIED AS MOOT** and Defendant's motion to dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiff Korease Collins filed a complaint for employment discrimination on May 1, 2025 (Doc. 1) and an amended complaint on May 22, 2025 (Doc. 10).  Plaintiff is an individual of Caribbean national origin who worked as a teacher assistant for Defendant CSRA Economic Opportunity Authority.  (Id. at 2.)  She was employed by Defendant from 2016 to 2023.  (Id.)  In May 2021, Plaintiff received an award for being the teacher assistant of the year from

the then-director of her workplace.  (Id.)  In October 2021, she was asked to perform lead teacher duties without receiving a new title or additional pay, and she purchased $1,200.00 in classroom materials without reimbursement.  (Id. at 3-4.)

At the start of the 2022 school year, Plaintiff decided she would no longer use her money to buy supplies for the classroom or perform additional work, and her new supervisor, Ms. Mitchell, transferred her to a new classroom.  (Id. at 4-5.)  During 2022 and into 2023, Plaintiff details many instances where she received disciplinary action through verbal or written warnings, as well as suspensions, such as for taking time off work, alleged poor work performance, insubordination to coworkers, and not completing job tasks as required, among others.  (Id. at 5-9.)  In February 2023, Plaintiff sent an email to Ms. Mitchell with a letter asking for respect to be shown to all and highlighting some negative interactions Plaintiff had at work.  (Id. at 8-10.)  In March 2023, Plaintiff sent emails to Beverly King, a human resources ("HR") director, containing her written complaint about her coworkers, and she contacted the Equal Employment Opportunity Commission ("EEOC") to file a charge of discrimination (the "EEOC charge") against Defendant.  (Id. at 12, 21-23; Doc. 28-1, at 16.)  On May 25, 2023, Plaintiff contacted Ms. King and asked about her "back to work letter," for the next school year, which she had yet to receive.  (Doc. 10, at 13.)  On June 23, 2023, Plaintiff learned

2

via letter that she had been recommended for termination by Ms. Belcher, the Head Start Program Director. (Id. at 13-14.) On June 29, 2023, she emailed Ms. King a letter (the "Grievance Report"), who then forwarded it to Ms. Belcher and others. (Id. at 38-40; Doc. 28-1, at 18.) The Grievance Report stated Plaintiff was treated unfairly since Ms. Mitchell was promoted to center director in 2022, and includes several examples, some of which are outlined above. (Doc. 10, at 38-41.) On July 19, 2023, Plaintiff was notified that the Head Start Policy Council ("Policy Council") met and approved Ms. Belcher's recommendation for termination. (Id. at 20.) She later submitted an EEOC charge that was received by the EEOC on August 11, 2023, and alleged national origin discrimination. (Id. at 28.)

Plaintiff's amended complaint alleges unlawful discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Id. at 34.) Plaintiff attached her right to sue letter and the EEOC charge, and she timely filed her complaint within 90 days. (Id. at 27-28.) Plaintiff asserts that Defendant engaged in discriminatory conduct, including unequal terms and conditions of her employment, retaliation, hostile work environment, and wrongful termination based on her national origin. (Id. at 35-36.) Plaintiff also mentions disparate treatment in passing, but does not list it as a claim on the complaint form or EEOC charge. (Id. at 28, 35.) Additionally, she alleges discrimination "on the

3

basis of race, sex, national origin, and disability." (Id. at 36.) Plaintiff seeks the following relief: (1) "back pay and front pay damages including loss of wages, benefits, retirement contributions, and scholarship eligibility payments;" (2) "compensatory damages for emotional distress, job burnout, credit cards default, and life disruption" totaling $22,271.20; (3) $100,000.00 in punitive damages for "reckless and willful termination[,] retaliation[,] and discrimination, including nepotism, falsified write ups, abuse of power, national origin discrimination, and retaliation;" (4) $50,000.00 in damages for emotional distress due to emotional pain and suffering; (5) pre and post-judgment interest; (6) costs of this action; and (7) such other relief as the Court deems proper. (Id. at 37.) Plaintiff calculates the total requested relief at $172,271.20. (Id.)

On July 21, 2025, Plaintiff filed a motion for entry of default. (Doc. 17.) In a later filing, Plaintiff states she "withdraws reliance on default and requests that the Court consider this matter on the merits." (Doc. 23, at 1.) Given Plaintiff voluntarily withdrew the motion, her motion for entry of default (Doc. 17) is **DENIED AS MOOT.**

On August 15, 2025, Defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) Plaintiff responded in opposition (Doc. 23), Defendant replied in support of its motion (Doc. 27), and Plaintiff filed a

4

motion for leave to file sur-reply (Doc. 28).  The Court's October 15, 2025 Order held it would consider Plaintiff's sur-reply (Doc. 28-1) in analyzing Defendant's motion, and concluded it would decide whether to consider Plaintiff's sur-reply exhibits when ruling on the pending motion to dismiss.  (Doc. 30, at 2.)

Given the test applied by the Eleventh Circuit in Johnson v. City of Atlanta, the Court finds it will consider Plaintiff's sur-reply exhibits.    107 F.4th 1292, 1300 (11th Cir. 2024) (articulating that "when resolving a motion to dismiss . . . a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged"). The attached communications between Plaintiff and work-related individuals about her workplace environment and termination are central to her claims because they detail events related to her claims and show her efforts to communicate these instances to HR, among others.  (Doc. 28-1, at 6-20.)  Further, Defendant does not dispute the authenticity of the exhibits.   (See Doc. 29.) Accordingly, the exhibits satisfy the test laid out in Johnson, and the Court will consider the Plaintiff's sur-reply exhibits in its analysis.  107 F.4th at 1300.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual

allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## III. DISCUSSION

The Court reviews each of Plaintiff's claims and Defendant's arguments in detail below.

### A. National Origin Discrimination Under Title VII

Title VII prohibits employers from discriminating "against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

The plaintiff, who bears the initial burden of establishing a prima facie case of discrimination, must show "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." Lewis v. City of Union City, 918 F.3d 1213, 1220-21 (11th Cir. 2019). However, "plaintiffs are not required to set out a prima facie case in a complaint because the prima facie case is an 'evidentiary standard, not a pleading requirement.'" McCullough v. Bd. of

7

Regents, 623 F. App'x 980, 982-83 (11th Cir. 2015) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). While "a plaintiff need not plead a prima facie case to survive dismissal, the complaint must satisfy Iqbal's 'plausible on its face' standard, and the allegations must be sufficient to 'raise a right to relief above the speculative level' under Twombly." Id. at 983 (citations omitted). Thus, "a plaintiff need not allege facts sufficient to make out a classic [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)] prima facie case," but "the allegations must provide enough factual matter (taken as true) to suggest intentional [national origin] discrimination." Graham v. Glynn Cnty. Schs., No. 2:23-CV-112, 2024 WL 3873418, at *4 (S.D. Ga. Aug. 19, 2024) (citation omitted).

Defendant argues Plaintiff failed to exhaust her administrative remedies because she did not allege unequal terms and conditions of employment in her EEOC charge, nor inform the EEOC of any facts to support her claim. (Doc. 19, at 11-12.) Additionally, she stated the real reason for her unequal treatment at work was due to "nepotism," not her national origin, which is not actionable under Title VII. (Id. at 9.)

The Court finds Plaintiff's EEOC charge put the EEOC on enough notice for her discrimination claim involving unequal terms and conditions based on national origin. Because "[a] plaintiff's judicial complaint is limited by the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination," and Plaintiff alleged discrimination based on national origin such that an investigation could lead to unequal terms and conditions, the Court finds the claim has been administratively exhausted. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994) (citation omitted).

Although the Court finds Plaintiff administratively exhausted this claim, her general allegations of unequal terms and conditions of employment do not sufficiently allege a claim for intentional national origin discrimination.  · Plaintiff alleges she was required to do additional tasks without a pay increase or title change, was not compensated for the long hours she worked, had to pay for her own classroom supplies when lead teachers did not, and was suspended or disciplined for instances that others who were involved were not. (Doc. 10, at 3-5, 9.)  However, she does not provide supporting allegations that these events were due to national origin, rather than another explanation such as favoritism. Plaintiff states multiple times that her mistreatment was due to nepotism in the workplace given many coworkers were related or neighbors. (Id. at 36.)  These facts more so support an unactionable nepotism theory over discrimination based on national origin. Hawthorne v. DeJoy, No. 1:21-cv-03885, 2023 WL 5987406, at *6 (N.D. Ga. June 27, 2023) (finding Title VII discrimination claims failed to meet Iqbal standard when

9

"Plaintiff allege[d] that her supervisor . . . showed unspecified 'nepotism' . . . to [supervisor]'s sibling . . . [thus] Plaintiff has alleged no facts that plausibly demonstrate that [supervisor]'s apparently more favorable treatment of her sibling was due to race or sex, as opposed to the fact that the employee was [supervisor]'s family member.")  Other than briefly mentioning that people would occasionally notice her Caribbean accent and ask where she was from, there are no allegations of interactions based on national origin with coworkers or supervisors.  (Doc. 10, at 3.)  Plaintiff also does not allege similarly situated employees outside of her class were being treated more favorably, as other's national origins, forms of payment, job roles and responsibilities, and disciplinary histories were not alleged. (See generally id.)  Based on the information provided, it appears Plaintiff typically had negative interactions with coworkers in other roles and positions of authority, such as directors, lead teachers, and family service workers rather than teacher assistants such as herself.  (See generally id.)  For example, Plaintiff alleges she had to pay for her own classroom supplies while coworkers did not, and she does not detail whether other teacher assistants also paid for their own supplies.  (Doc. 10, at 3-4.)  As a result, Plaintiff compares her situation to employees who are not similarly situated because they held different jobs with varying responsibilities compared to her own.  For that

10

reason, the facts provided do not indicate similarly situated employees were treated more favorably. As such, Plaintiff failed to state a claim for unequal terms and conditions of employment.

Wrongful termination based on discrimination requires the same analysis as above. Lewis, 918 F.3d at 1220-21. If wrongful termination is based on a protected characteristic in Title VII such as national origin, then the plaintiff is required to plead supporting facts showing that connection. Miller v. Fanning, No. 4:16-cv-033, 2016 WL 4492844, at *2 (S.D. Ga. Aug. 25, 2016).

Defendant again argues Plaintiff's claim fails because she alleged "nepotism was the real reason for her . . . termination" rather than unlawful national origin discrimination. (Doc. 19, at 9.) Plaintiff provides no rebuttal to this argument, and she mentions the term "wrongful termination" only briefly in the context of damages and checked the box for termination in her amended complaint. (See Doc. 10, at 15, 35.)

The Court finds Plaintiff again fails to allege sufficient facts about other employees, such as how they are treated by Defendant relative to her, if they have different job expectations, or if there are similar supervising and disciplinary procedures throughout the workplace. (See generally id.) As a result, there is not enough factual matter, even when taken as true, to state a claim for wrongful termination.

11

Accordingly, Plaintiff's discrimination claims fail to meet the Twombly and Iqbal standards, and the allegations do not raise her claims above the purely speculative level. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. Thus, Defendant's motion to dismiss Plaintiff's discrimination claims is **GRANTED**.

## B. Retaliation Claim

Title VII's provision on retaliation makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To make a prima facie showing of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected conduct; (2) that she suffered adverse employment action; and (3) that there is 'some causal relation' between the two events." Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1268 (11th Cir. 2010) (citation omitted).

Defendant argues Plaintiff fails to state a claim of retaliation because her "entire complaint revolves around the theory that she is the victim of nepotism" and the reason stated for her termination was "to create a job opening for a relative of the Burke County Head Start's Center Director" rather than for an unlawfully discriminatory reason such as national origin. (Doc.

12

19, at 8.) Additionally, it argues her complaints to HR were not statutorily protected conduct because she allegedly opposed nepotism, but "did not raise any complaint with HR about alleged national-origin discrimination until *after* learning the Head Start Program Director had recommended her termination." (Id. at 10.) Defendant further argues Plaintiff fails to allege Ms. Belcher, who recommended Plaintiff be terminated, or Defendant's Policy Council, who approved the termination, knew Plaintiff complained about discrimination or contacted the EEOC. (Id. at 11.) Thus, Defendant argues Plaintiff failed to allege the actors who approved her termination were aware of her complaints of national origin discrimination. (Id.)

To be a statutorily protected activity, "the employee must . . . communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred." Demers v. Adams Homes of Nw. Fla., Inc., 321 F. App'x 847, 852 (11th Cir. 2009) (quotations and citation omitted). Plaintiff alleges she was "retaliated against after opposing discrimination and seeking to file a complaint against a coworker," which led to her termination after she continued to oppose the discriminatory treatment. (Doc. 23, at 2.) She shows she sent an email to Ms. Mitchell, a supervisor, in February 2023 addressing incidents that occurred between her and some coworkers. (Doc. 28-1, at 11, 14.) The email states, "[o]n

13

Friday I was bothered by something and . . . I began to jot down some of the issues I have faced within this week in hopes that these issues will be addressed and improved. . . . My hopes is that 'Respect' will be shown to all." (Id. at 11.)  She attached a writing she authored entitled "She Ask You To Assist, You Complain," which details negative interactions she had with various coworkers the previous week. (Id. at 14.)  No part of the email to Ms. Mitchell, nor the writing, alleges discrimination based on a protected characteristic. (See id. at 11, 14.)

Plaintiff also emailed Ms. King, with HR, in March 2023 to send her a copy of the email and letter sent to Ms. Mitchell in February 2023, as well as to detail the circumstances of her March 2023 disciplinary write-up. (Id. at 11-18.)  In one email, Plaintiff states she was suspended "with no real reason" and that she is "being punished for something that [she] have [sic] no fault over." (Id. at 16.)  She also filed a written complaint with Ms. King about a coworker that allegedly lied about her. (Id.)  These communications also do not allege national origin discrimination. (Id.)

On March 21, 2023, Plaintiff received a written warning for failure to perform assigned duties, failure to follow instructions, and failure to follow established rules, and it states the "[n]ext offense will result in further disciplinary [sic] which will include termination." (Id. at 7.)  The warning

14

cites Plaintiff because her cell phone rang multiple times during class, the lesson plan was not posted or followed, and there was a missing health check for a student. (Id.) At this point, Plaintiff still does not allege national origin discrimination. (Id. at 7-8.)

Plaintiff learned she had been recommended for termination via letter on June 23, 2023. (Doc. 10, at 20.) On June 29, 2023, she emailed Ms. King the Grievance Report, who then forwarded it to Ms. Butler, an HR assistant, and unknown others within the organization. (Doc. 10, at 38-40; Doc. 28-1, at 18.) The Grievance Report details several instances where Plaintiff alleges she was treated unfairly or wrongly ever since Ms. Mitchell was promoted to center director in 2022. (Doc. 10, at 38-41.) She mentions her theory of nepotism multiple times, stating, "I believe there are plans for more relatives to join her team, which by me loosing [sic] my position . . . w[ould] be perfect for her additional relatives to get my spot," and "I've seen how [Ms. Mitchell] showed unfairness in many situations to back up her relatives or value others over me." (Id. at 38.) She does allege "a difference in culture has played a part in me being targeted," and concludes the writing by stating, "I honestly feel that my center director Mrs. Mitchell ha[s] violated the code of ethics and in my opinion ha[s] discriminated against me because of my national origin." (Id. at 38, 40.) On July 19, 2023, Plaintiff

15

was notified via letter that the Policy Council met and approved Ms. Belcher's recommendation for termination, and she was no longer employed.  (Doc. 10, at 20.)

Importantly, Plaintiff's EEOC charge was dated August 11, 2023, over a month after she learned she had been recommended for termination.  (Id. at 28.)  The provided March 2023 emails to Ms. Mitchell and Ms. King did not outline a theory of national origin discrimination, nor any other form of protected class discrimination.  (Doc. 28-1, at 11-14.)  Given this, the Court finds Defendant was unaware of any complaints of national origin discrimination, so there could not be retaliatory intent in Plaintiff's termination; thus, there is no causal connection between the two actions.  See Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013) (citation omitted) ("To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'").  It is unclear whether Ms. King shared the March 2023 communications between her and Plaintiff with Defendant.  Even if Ms. King, an HR employee rather than a supervisor, informed Ms. Mitchell, Ms. Belcher, or other higher-ups in the organization about her emails with Plaintiff, there are no allegations that the decisionmakers were put on notice of Plaintiff's assertion of Title VII discrimination such that they could have retaliated with

16

termination.    Plaintiff    did    not    allege    national    origin discrimination until after she received the June 20, 2023 letter recommending termination, and there are no allegations that the Policy Council that voted for termination was provided with or aware of Plaintiff's Grievance Report either before or after the vote.    (See Doc. 10, at 38-41; Doc. 28-1, at 18.)

The Court finds there are no facts alleged to support an element of Plaintiff's retaliation claim, the causal relation between the protected conduct and the adverse employment action, and as a result, "no construction of the factual allegations will support the cause of action." Alvarez, 610 F.3d at 1268; Marshall Cnty. Bd. of Educ., 992 F.2d at 1174 (citation omitted).    Thus, Defendant's motion to dismiss Plaintiff's retaliation claim is **GRANTED**.

## C. Hostile Work Environment Claim

Next, Defendant argues Plaintiff did not properly state a claim for hostile work environment because she did not list it in her EEOC charge and did not include factual support for the claim. (Doc. 19, at 6.)    To establish a hostile work environment claim under Title VII, Plaintiff must show "(1) [s]he belongs to a protected group; (2) [s]he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment; and (5) the employer was

17

responsible for the hostile work environment." Copeland v. Ga. Dept. of Corr., 97 F.4th 766, 774 (11th Cir. 2024) (citations and quotation marks omitted).

The Court finds Plaintiff did not put the EEOC on notice of her hostile work environment claim; thus, it has not been administratively exhausted. (See id. at 28.); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies."). The EEOC charge provides details of Plaintiff's termination, which she says occurred "due to [her] violation of policy and procedure," states she was fired because of discrimination based on national origin, and then states "[t]he center I worked at was all relatives and they discriminated against me." (Doc. 10, at 28.) Nothing in the EEOC charge puts the EEOC on notice of a hostile work environment, and such claim could not reasonably be expected to grow out of the EEOC investigation when Plaintiff failed to allege any form of harassment, the severity of harassment, or that the employer was responsible rather than other coworkers. (Id.); Mulhall, 19 F.3d at 589 n.8.

Given Plaintiff did not include a hostile work environment claim nor provide any facts potentially leading to the claim in the EEOC charge, she failed to administratively exhaust the claim;

18

thus, Defendant's motion to dismiss Plaintiff's hostile work environment claim is **GRANTED**.

## D. Disparate Treatment Claim

To establish a prima facie case of national origin discrimination, including a disparate treatment claim under Title VII, the plaintiff must show: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted).

Defendants argue Plaintiff has not asserted a plausible disparate treatment claim because she "does not allege that Defendant engaged in neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." (Doc. 19, at 9 (citation omitted)). Instead, Defendants argue Plaintiff "claims that she was singled out, subjected to disparate treatment, and retaliated against as a result of nepotism and favoritism." (Doc. 19, at 9. (emphasis omitted)). Based on this, Defendants argue, Plaintiff alleges nepotism was the cause of her adverse employment actions rather than her national origin. (Doc. 27, at 4.) Plaintiff alleges she is part of a protected class, was subject to adverse employment actions such as write-ups and

19

termination, was qualified for the job, and had various negative interactions with her coworkers, but she fails to provide facts showing employees outside of her class were treated more favorably. (See generally Doc. 10.) In a similar analysis to her discrimination claims above, Plaintiff does not allege the national origin of particular employees that were treated differently or otherwise indicate that similarly situated employees were treated more favorably. (See id.) It is unclear which coworkers were teacher assistants, such as Plaintiff, and how they were treated comparatively to her. However, Plaintiff repeatedly states her mistreatment and adverse employment actions were due to nepotism in the workplace, thus providing facts supporting a favoritism theory over discrimination based on national origin. (Id. at 36); Hawthorne, 2023 WL 5987406, at *6. Because of this, she failed to provide facts to support that her employer treated similarly situated employees outside her class more favorably, and her claim is insufficient even when all pleaded facts are taken as true. As a result, Defendant's motion to dismiss Plaintiff's disparate treatment claim is **GRANTED.**

**E. Additional Discrimination Claims Based on Race, Sex, Disability**

Finally, Defendant argues Plaintiff did not address any claims for discrimination based on race, sex, or disability within the EEOC charge, so they have not been administratively exhausted. (Doc. 19, at 6.) Plaintiff's responses do not address these

20

arguments. The Court finds Plaintiff has not administratively exhausted these claims. The EEOC charge contains details about only national origin discrimination based on her termination and lack of a hearing on the matter. (Doc. 10, at 28.) Given a plaintiff's complaint is restricted by the scope of the EEOC investigation that is reasonably expected to grow out of the charge of discrimination, and Plaintiff provided no facts regarding sex or disability discrimination, those claims have not been administratively exhausted. Mulhall, 19 F.3d at 589 n.8.

Even if it were found that race discrimination could grow out of the EEOC charge under national origin discrimination, Plaintiff has not properly pled a race discrimination claim. For discrimination based on race, a plaintiff must show: (1) she belongs to a statutorily-protected class; (2) she was qualified to do her job; (3) she experienced an adverse employment action; and (4) her employer treated similarly situated employees outside of her protected class more favorably. Crawford, 529 F.3d at 970 (citation omitted). Although Plaintiff alleges her race, her qualifications, and adverse employment actions, she does not provide facts regarding coworkers of other races being treated more favorably. (See Doc. 10.) As pointed out above, Plaintiff alleges nepotism continuously throughout the complaint, which is not actionable under Title VII, as it does not involve discrimination based on "race, color, religion, sex, or national

21

origin." 42 U.S.C. § 2000e-2(a)(1). As such, Plaintiff has not stated a claim for race, sex, or disability discrimination, and Defendant's motion to dismiss these claims is **GRANTED**.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's motion for entry of default (Doc. 17) is **DENIED AS MOOT** and Defendant's motion to dismiss (Doc. 19) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___11th___ day of March, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

22